## THE W. S. TOMPKINS.

### (District Court, E. D. New York. April 19, 1902.)

**COLLISION—STEAM AND SAILING VESSELS—NEGLIGENT NAVIGATION OF SCHOONER.**
A steam ferryboat, crossing East river, stopped and headed up stream to allow the passage of three schooners which were coming down the river nearly abreast. When about 150 feet distant the outer one of the schooners sheered, and came into collision with the steamer. After the sheer the steamer backed, but was unable to avoid the collision. *Held*, upon the evidence, that the fault was solely that of the schooner, which had been left ample room to pass, but which sheered through negligent navigation, and when so close that the steamer could not have prevented the collision.

In Admiralty. Suit for collision.

Wilcox & Green, for libelant.

Alexander & Ash, for claimant.

THOMAS, District Judge. Shortly before 1:50 o'clock p. m. on April 9, 1901, three schooners, the Kemp nearer the New York shore, the Ophelia outside of her, the Tompkins still farther off shore, passed down the East river. The wind was moderately strong from about the W. N. W., the tide was ebb, the schooners, under full sail, were on parallel courses, and from 50 to 100 feet apart. At about 1:50 p. m. the ferryboat Vermont left her slip at the foot of Broadway, Brooklyn, bound for Grand street, New York, and when near the center of the river headed up stream, and stopped to await the passing of the three schooners. The schooners were sailing very nearly together, but in this order: The Kemp ahead, the Tompkins somewhat behind her, and the Ophelia somewhat behind the Tompkins. When the Tompkins was 150 or 200 feet from the Vermont, she sheered to port and directly upon the Vermont. Thereupon, when this sheer and its continuance were discovered by the Vermont, her machinery was put in motion, and she was backed, but did not escape collision with the Tompkins, and for the injury thereby received by the Vermont this libel has been filed.

The Tompkins sheered,—of that there is no doubt; and the preponderance of evidence—and some of the most effective evidence is disinterested—is that the sheer continued for such time as to contribute to the injury. But it is urged that the Vermont, upon discovering the sheer, went astern across the course of the Tompkins, and that the Tompkins had come back onto her proper course before the accident happened, and would have passed the Vermont without injury, had it not been for the Vermont's action. The Vermont was a side-wheel ferryboat, and unless controlled would go astern on a direct course.

It is urged by the claimant that the Vermont was pointing somewhat towards the Brooklyn shore, but when she backed she backed towards the New York shore. It seems to the court that this contention has not been sustained. In any case, the Vermont did not back until the collision was inevitable, and it is considered that the collision would not have been escaped had she gone ahead, as it is now claimed she should have done. It is also objected that the Vermont stopped too

near the course of the Tompkins, and that the sheer was caused by a sudden puff of wind or squall, which caused the Tompkins to go out of her course, and that the Vermont should have anticipated such happening. There is some considerable discrepancy respecting the distance of the course of the Tompkins from that of the Vermont. But it will be observed that the Vermont was as far to the east of the Tompkins' course as the Tompkins was east of the course of the sailing vessel next inside of her, and in any case there was plenty of room for the Tompkins to have passed in safety. Of the sheer and its continuance and its contribution to the injury there is not the slightest doubt, nor is the explanation of the sudden gust of wind satisfactory. The Ophelia did not deviate on account of such a puff, but both she and the Kemp passed along securely and safely. If the gust overtook the Tompkins, there is no reason why it should have been allowed to divert the vessel from her course to the extent the evidence shows, and there must have been negligence in her navigation.

It is urged on the part of the sailing vessel that there was not a proper lookout on the Vermont. The deckhand was on the forward part of the boat, and saw the Tompkins when she sheered, but in any case the pilot saw it at the instant of her sheering, and nothing more was required.

The evidence of the libelant clearly outweighs that of the claimant, as to the time when the Tompkins sheered, her distance from the Vermont, the continuance of the sheer, and her bearing down directly upon the ferryboat. If the ferryboat had remained still or gone forward, in either case the Tompkins would have collided with her, and it is believed that the ferryboat did not cause the collision by backing across the Tompkins' course.

There should be a decree for libelant for damages and costs.